8   UNITED STATES DISTRICT COURT
9   WESTERN DISTRICT OF WASHINGTON
    AT SEATTLE

10  CITY OF BUCKLEY,                    CASE NO. C10-5209 MJP

11                  Plaintiff,          ORDER ON PLAINTIFF'S MOTION
                                        FOR SUMMARY JUDGMENT
12          v.

13  ANGELA TOMAN,

14                  Defendant.

15

16  The Court, having received and reviewed:

17  1. Plaintiff's Motion for Summary Judgment (Dkt. No. 77)

18  2. Defendant Angela Toman's Opposition to Plaintiff's Motion for Summary Judgment

19     (Dkt. No. 101)

20  3. United States' Response to Plaintiff's Motion for Summary Judgment (Dkt. No. 108)

21  4. Froemkes' Memorandum Opposing Plaintiff's Motion for Summary Judgment (Dkt.

22     No. 110)

23  5. Plaintiff City of Buckley's Reply to Defendants' Opposition to Plaintiff's Motion for

24     Summary Judgment (Dkt. No. 112)

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that the motion is DENIED.

**Background**

Plaintiff's water supply is drawn from a large creek by means of a 5.5 mile (gravity-operated) transmission main (built in 1927) connected to a water treatment facility with a reservoir. The pipeline is unrestricted and the City cannot use all the water that flows to the treatment facility – the overflow from the reservoir is bypassed into Spiketon Ditch. Additionally, since 1997, a slow-sand filtration system installed at the treatment facility has resulted in stormwater runoff also being conveyed into Spiketon Ditch.

The City began obtaining easements for use of Spiketon Ditch in the 1930s. An easement was acquired for property directly west and adjacent to Defendants' parcels (the "Gablais easement") – no easement was ever obtained for Defendants' properties. Plaintiff concedes that the portion of the ditch on Defendants' property pre-existed the use to which the City has been putting it since the '30s. Pltf Mtn, p. 6.

In 1952, the City excavated a new drainage ditch in the vicinity of Defendants' property (the exact location of the 1952 excavation is disputed). Plaintiff's brief states that "[t]he City's activities made it abundantly clear that the City used the ditch for overflow and stormwater drainage purposes, and these activities were well-known throughout the community." Pltf Mtn, p. 6. As evidence of community knowledge, Plaintiff cites

1. Minutes of the City Council meeting of March 27, 1951, where the proposal was adopted. Starr Decl., Ex.7.
2. Minutes of the City Council meeting of June 17, 1952, a special meeting called to discuss the project with residents in the area (several of whom signed easements that evening). Id., Exs 9 – 11.
3. Minutes of the City Council meeting of July 22, 1952, discussing the progress of the excavation. Id., Ex. 14.
4. Minutes of the City Council meeting of August 26, 1952, where the Mayor reported completion of the project. Id., Ex. 15.

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT- 2

1     5. News articles in the <u>Buckley News Banner</u>, announcing the decision, reporting the
        special June 17 meeting and displaying photographs of construction equipment. Id., Exs.
2       1 and 2.

3       Between 1952 and 2008, reservoir overflow and stormwater drainage flowed through

4  Spiketon Ditch.  The City claims that it performed periodic maintenance (including using a

5  backhoe and crews of high school students and – later – inmates) on the ditch, a claim that is

6  disputed by Toman and the Froemkes.  Both Defendants report ordering crews off their property

7  and deny that any backhoes were ever used to clear out the ditch on their land.  The City was

8  ordered by the Army Corps of Engineers to cease maintaining Spiketon Ditch in 1998.  Brendel

9  Decl., Ex. 1.

10      In 2008, the reservoir overflow (but not the stormwater drainage) was directed away from

11 Spiketon Ditch by means of a plug mechanism which could be manipulated to direct the

12 overflow into either Spiketon Ditch or another drainage ditch (Levesque Ditch).  One year later,

13 an agreement between the City, the Puyallup Tribe and the Washington State Department of

14 Ecology permitted the City to once again direct reservoir overflow through Spiketon Ditch.

15      The City notified affected property owners about the resumption of overflow into

16 Spiketon Ditch (although they failed to notify the Froemkes, who learned about it through a

17 neighbor). In response to objections by Toman and the Froemkes, the City filed this suit.

18      Defendant Toman purchased her property in 1996, and was told by the previous owner

19 that the ditch was spring-fed.  She has produced in evidence a 1915 agreement between the

20 owner at that time (J.C. Ames) and an adjoining property owner, purchasing a strip of land to

21 allow Ames to pipe water from a spring (on the property now owned by the Froemkes) into the

22 ditch.  Toman Decl., Ex. 3.  She also produced declarations from property owners and occupiers

23 dating back to the 1940s corroborating the understanding that the source of the water in Spiketon

24

Ditch was a nearby spring. Belcher and Ames Decl's.[1] Toman has always maintained the ditch herself (as did her predecessors). Toman Decl., ¶ 6; Belcher Decl., ¶ 5; Ames Decl., ¶ 9. The only time in her entire occupancy that Toman saw maintenance workers entering her property (about 1998), she ordered them to leave and they did so. Toman Decl., ¶ 5. Toman says that there was no evidence of unusual or noteworthy use of the ditch until 2004, when the ditch began filling with muddy water, flooding the ditch and filling her pond with sediment. Id. at ¶ 16.

The Froemkes purchased their property in 1978. At the time of purchase, they "knew that some overflow and by pass water from the City of Buckley water system ran in Spiketon Ditch." Froemke Brief, p. 2. He reports, however, that he was told by the previous owner (Mr. Holmes) that the City used the ditch with the permission of the prior owners. Froemke Decl., ¶ 3.[2] During the 33 years they have lived on the property, the City never maintained the ditch; the Froemkes also report a single incident where a City work crew was evicted from the property, an eviction which the City never challenged. Froemke Decl., ¶ 5. The City's use of the ditch for overflow and drainage purposes never impacted the Froemkes' use of their land.

The Froemkes also report another instance of defending their control of Spiketon Ditch. In 2001, the City sought to reclassify the ditch to a fish-bearing stream. The reclassification would have had a severe impact on Defendants' use of their property (including a 200-foot setback buffer on both sides of the ditch) and the Froemkes vigorously and publicly opposed it. Ultimately, the reclassification effort failed but perhaps more significantly for purposes of this motion, the City never asserted any interest in the Froemkes' land in response to their opposition.

---

[1] Plaintiff moves to strike these declarations in accordance with FRCP 37(c)(1) because neither of these witnesses were disclosed to the City. Although the statute provides exceptions where the failure was "substantially justified or [] harmless," the motion was made in the City's reply and Toman did not respond to explain the failure to disclose. The Court notes that, pursuant to Judge Leighton's order of February 23, 2011 (Dkt. No. 111), the case schedule will be revised following issuance of this ruling. Defendant Toman is ordered to disclose these witnesses and make them available for deposition should the City request.

[2] The City moves to strike this statement as hearsay. The Court agrees that it is inadmissible.

**Discussion/Analysis**

The elements required for proof of a prescriptive easement are a use of the claimed easement that is

1. Open and notorious
2. Continuous and uninterrupted
3. Over a uniform route
4. Adverse to the owner of the alleged servient estate, and
5. With the knowledge of the owner at a time when the owner could have lawfully asserted ownership rights
6. For a 10-year period.

Mountaineers v. Wymer, 56 Wn.2d 721, 722 (1960).

Prescriptive easements are not favored by law. Long v. Leonard, 1919 Wash. 284 (1937); Downie v. City of Renton, 167 Wash. 372, 373 (1932). "In a claim for prescriptive easement, there is a presumption that the servient property was used with the permission of, and in subordination to, the title of the true owner." Kunkel v. Fisher, 106 Wn.App. 599, 603 (2001)(citations omitted). The use is transformed into a prescriptive easement "only if the user makes a distinct, positive assertion of a right adverse to the property owner." Id. at 604.

The circumstances of the two property owners present different issues – Defendant Toman did not think the water was being introduced by any other than natural means, while the Froemkes knew that the ditch was being used for runoff/drainage and overflow purposes but thought that the City's use was permissive. Ultimately, both Defendants introduce sufficient issues of disputed material facts that summary judgment is not an appropriate resolution for this case.

The issues of uninterrupted continuity and uniform route are not disputed by the parties (except as to the abandonment issue, which is discussed *infra*), so they will not be discussed further. The remaining elements of a prescriptive easement claim are analyzed below.

Open and notorious[3]

17 Washington Practice § 2.7 (2d ed., 2004) defines this element as

> the use of another's land is not concealed and… it is reasonably discoverable by an owner, who is charged with seeing what is going on on his land. It should not mean that the owner has to have actual knowledge but only that a reasonably diligent owner who looked would discover the usage. In the case of surface uses, such as roads or above-ground utility lines, there should be no serious issue of notoriousness.

Plaintiff describes its use of Spiketon Ditch as "visible and apparent." Pltf Mtn, p. 15. But this is not a case where the source and nature of the use <u>is</u> apparent. The City's directing water into Spiketon Ditch is not analogous to the use of a roadway or other access, where a property owner can see who is driving or walking over the property and determine that they do not have permission. Nor is it similar to a case where, by means of a manmade device such as a pipe, culvert or other drain, a property owner is put on notice that someone else is diverting water onto or through the property. This is simply water flowing through a pre-existing (the City concedes that it did not construct the ditch; *see* Pltf Mtn, p. 6) ditch with nothing to indicate its source. Additionally, there is no evidence that the City's use of the ditch interfered with the Defendants' use and enjoyment of their land (at least up until 2004), further detracting from Plaintiff's argument that the nature of their use was apparent or "reasonably discoverable."

The City states that its use of the ditch "for reservoir overflow and stormwater drainage was conspicuous such that an ordinarily vigilant man would notice the use." This confuses noticing that there was water in the ditch with knowing where it came from. No one disputes that water regularly flowed through Spiketon Ditch; the City offers no explanation of how someone observing the water would know that it represented a use by the City.

---

[3] This is not an issue as to the Froemkes, who knew that the water represented reservoir overflow and excess stormwater drainage.

1         Toman's belief that the water was from a natural source[4] is labeled by the City as "not relevant." Id., p. 15. This may be true, but it does not alter the City's burden to establish how Toman (or the hypothetical "reasonably diligent owner") would have known that the City was responsible for the water in the ditch.

        Plaintiff does not dispute that Toman did not know where the water came from, but cites Downie for the rule that the servient property owner's actual knowledge of the use is not a prerequisite for determining whether the use is "open and notorious." 167 Wash. at 378. The courts are willing to presume open and notorious use "where the works or operation of the adverse claimant are matter [*sic*] of common notoriety or so conspicuous that they would not escape the notice of an ordinarily vigilant man." Id. For the reasons cited thus far, the Court does not find that Plaintiff has succeeded in establishing the diversion of water into Spiketon Ditch as a "conspicuous" use.

        This leaves the City with the burden of establishing this element on the basis of common or community knowledge. Again, the Court finds that the City has failed to establish sufficient undisputed facts to form a basis for summary judgment. Plaintiff makes the unsupported claim that the City's use of Spiketon Ditch for overflow and drainage purposes was "well-known throughout the community." Pltf Mtn, p. 6. What is presented in terms of evidence falls into two categories: City Council meeting minutes and local newspaper articles. These fall short of the proof required for two reasons: (1) the documents all concern the "Ryan Road" project of

---

[4] Even if the Court were to strike the declarations of Toman's witnesses on FRCP 37(c)(1) grounds, she has still produced a document (not disputed by Plaintiff) which gives every indication that the "ditch" was actually spring-fed. *See* Toman Decl., Ex. 3. Toman has introduced a genuine dispute of material fact regarding whether she was on notice of the City's use of Spiketon Ditch. And, even assuming that additional water ran through the ditch during periods of prolonged rain, the City has offered no evidence or argument as to how Toman would have known that the excess water was not simply natural runoff from the properties abutting the ditch "upstream," as opposed to stormwater drainage which was being diverted by the City into the channel.

1952, so offer no proof of community knowledge from the 1930s to that time; and (2) a review by the Court of the Council minutes and newspaper articles submitted by the City failed to yield evidence that someone reading them would be informed that Spiketon Ditch was being used by the City for reservoir overflow purposes.[5] That fact is never mentioned, so this evidence falls short of demonstrating the existence of notoriety on the basis of community knowledge.

Additionally, the case upon which Plaintiff relies for its standard of "community knowledge" would appear to require more than simply holding city council meetings about the issue. The court in <u>Pederson v. Washington State Dept. of Transportation</u>, 43 Wn.App. 413 (1986) upheld a judgment awarding a prescriptive easement to the City of Normandy Park to pump drainage water into Arrow Lake, imputing "community knowledge" to the challenging landowners. The court noted that

> [The issue] was discussed at city council meetings which were open to the public; *and the evidence shows that [Plaintiff] attended some of those meetings.* Consequently, the pumping system was open and notorious as of 1961.

<u>Id.</u> at 420 (emphasis supplied). The City presented no evidence that the previous owners of Toman's property were present at any of the Council meetings whose minutes are cited.

The City further claims that the excavation on the 1952 project occurred directly to the west of Toman's property and says that the construction "hardly seems inconspicuous." Plaintiff Mtn, p. 16. But Toman disputes that the ditch was dug where the City says it was, stating instead that "the 1952 easements are in a line in the north half of the northwest quarter of Section 11,

---

[5] The closest the City comes to this kind of evidence is a section of a <u>Buckley News Banner</u> article from June 19, 1952 which reads "Members of the Council… also explored the possibility of diverting the overflow of the reservoir south through Weyerhaeuser property and into Spiketon Creek." Rose Decl., Exs. 1 and 2. "Exploring the possibility of diverting the overflow… into Spiketon Creek" is <u>not</u> notice of a use or intended use. The Court notes that, although the City claims that "the town council minutes and newspaper articles provided are replete with references to the fact that the ditch was being used for purposes of conveying stormwater drainage and reservoir overflow," (Pltf Reply, p. 5 fn. 7), that conclusory statement is unaccompanied by a single citation to their evidence.

which is north of the Toman and Froemke properties." Toman Brief, p. 6. Since the City relies on this proximity to the Toman property to establish presumptive knowledge, these contrary allegations constitute a disputed issue of material fact.

Plaintiff presents no evidence establishing a basis for community knowledge regarding the initial overflow/drainage projects of the 1930s. Nor does the City respond to Toman's evidence that the motivation behind the 1930s excavations was to channel runoff to make the lowland property in that area farmable, a goal which did not impact Toman's property because of its relative elevation (20 to 30 feet higher than surrounding properties). This disputed issue of material fact goes directly to whether the prior owners of Toman's land had any reason to be apprised of the City's use of Spiketon Ditch at the point in time where the City's use began.

Adverse to the owner

Proof of this element does not require evidence of hostility or ill will, but only a demonstration of "use of property as the owner himself would exercise, entirely disregarding the claims of others, asking permission from no one, and using the property under a claim of right." Lingvall v. Bartmess, 97 Wn.App. 245, 250 (1999)(citing Malnati v. Ramstead, 50 Wn.2d 105, 108 (1957)). It is the general rule in Washington that, if all the remaining elements of a prescriptive easement have been established, adverse use may be presumed. 17 Washington Practice § 2.7 (citing Long v. Leonard, 191 Wn. 284 (1937); Kunkel v. Fisher, 106 Wn.App. 599 (2001); Drake v. Smersh, 122 Wn.App. 147 (2004)).

But, as laid out above, the City has not established all the other elements of a prescriptive easement. Further, the disputed issues of material fact concerning the City's maintenance (or

lack of maintenance) of Spiketon Ditch (discussed *infra)* operate as a complete obstacle, in and of themselves, to summary judgment in Plaintiff's favor.

There is an abundance of authority in both the cases and the treatises that maintenance of a claimed easement is an essential duty of the easement holder. "Responsibility for the maintenance and repair of an easement to keep it in proper condition lies with the owner of the easement." Washington Real Property Deskbook, 4th ed. (2009), § 7.6(3). "It is not only the right, but the duty, of the owner of an easement to keep it in repair. The owner of the servient tenement ordinarily is under no duty to maintain or repair it." AmJur2d, Easements and Licenses in Real Property, § 82.

Much of the law around the duty to maintain has centered on public roadways.

> [C]onstruction and maintenance of a public roadway is a use that contemplates a claim of right rather than the owner's permission, For this reason, we hold that the State's construction and maintenance… overcomes any presumption of permissive use."

Weidner v. State of Alaska, 860 P.2d 1205, 1210-1211 (Alaska Supreme Ct., 1993).

> [I]t is use by the public, *coupled with maintenance by the county*, that "gives rise to the right to establish a county road by prescription…" (citation omitted)… Maintenance by the county is necessary to show a "claim of right in the public," the extent of which need only be "as much as may be necessary to keep the road in substantial repair…" (citation omitted)

Lincoln County Bd. of Comm'rs v. Cook, 39 P.3d 1076, 1087 (Wyoming Supreme Ct., 2002).

Plaintiff claims that, between 1972 and 1976, a backhoe was used to clear the entire length of Spiketon Ditch of vegetation. Pltf Mtn, p.8; Brendel Decl., ¶ 3. Both parties deny that this ever happened -- Toman cites the existence of a barn which straddled the ditch in the '70s (Ames Decl., Ex. 1); Froemke says that "cross fencing" on his property would have prevented it (Froemke Decl., ¶ 7). Both sets of Defendants contend that the only maintenance performed on the ditch during their ownership of the property has been done by them, and each cites an

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT- 10

instance where they prevented City work crews from entering property. Toman Decl., ¶ 5; Froemke Decl., ¶ 5.

The disputed facts surrounding maintenance take on added weight under these circumstances because the "use" to which the City put the ditch did not operate, in and of itself, to demonstrate a claim of ownership adverse to the property interest of these Defendants. It was just water flowing through a ditch in a manner which did not interfere with Toman's or the Froemkes' use of their property. If these Defendants were ever going to be put on notice of the adverse interest claimed by the City, it would have been when the City exercised its duty to maintain its easement. The disputed issues of material fact surrounding this element of adverse use are sufficient, in and of themselves, to defeat summary judgment.

One other factor operates to defeat Plaintiff's quest for summary judgment against the Froemkes: the undisputed facts surrounding the Froemkes' battle to keep Spiketon Ditch from being reclassified as a fish-bearing stream. The Froemkes' formal objection to this proposal operated as a clear notice of intent to assert rights of ownership. Not only were they successful, but the City (which was the recipient and object of the protest) never controverted the underlying premise of the Froemkes' opposition: that, as owners of the ditch and surrounding lands, they had a right to object to any proposal which would have impacted their ability to use and enjoy their property.

This accumulation of evidence leads the Court back around to the presumption with which all prescriptive easement analysis originates: the presumption of permissive use. "In a claim for prescriptive easement, there is a presumption that the servient property was used with the permission of, and in subordination to, the title of the true owner." Kunkel v. Fisher, 106 Wn.App. 599, 603 (2001)(citations omitted). The use is transformed into a prescriptive

easement "only if the user makes a distinct, positive assertion of a right adverse to the property owner." Id. at 604.

The disputed facts surrounding the City's duty to maintain their claimed easement and the undisputed facts concerning the appeal of the reclassification attempt both operate to defeat any attempt to declare, as a matter of law, that the City positively asserted its rights to Spiketon Ditch in a manner adverse to Toman or the Froemkes.

<u>With the knowledge of the owner at a time when the owner could have lawfully asserted ownership rights</u>

The analysis of this factor is complicated by the City's failure to declare when they believe the prescriptive easement was actually established. There is an argument to be made that whatever these Defendants thought or did was really of no significance because the easement was established long before they assumed ownership of the property – but the City never makes that argument. There certainly is a dearth of evidence regarding what happened during the 1930s, and the City's evidence regarding "community knowledge" during the 1952 project is not conclusive.

Toman makes an argument that, even if a prescriptive easement was established at some point, the Defendants "reclaimed" Spiketon Ditch through their own open, notorious, continuous, uninterrupted and adverse use of the property for more than 10 years. Her argument is based primarily on the ejection of the work crew in the 90's and the Court does not find it persuasive. As the City points out, nothing she did interfered with its use of the ditch as an outlet for overflow and drainage.

In the final analysis, however, it is inconsequential whether the City has succeeded in satisfying the summary judgment standard for this particular element. The elements of the prescriptive easement claim are conjunctive; failure to establish any one of them dooms the claim. The City's failure to clear the summary judgment hurdles on the preceding elements is sufficient to defeat its motion.

Abandonment

The Froemkes expend a considerable amount of briefing on their argument that, when the City ceased using Spiketon Ditch as a reservoir overflow channel for a year in 2008, any easement it may have possessed was "abandoned." As both parties agree, abandonment requires proof of (1) a physical relinquishment of the easement and (2) an intent to abandon the easement. 17 Washington Practice § 2.12 (2d ed., 2004); Heg v. Allridge, 157 Wn.2d 154, 161 (2006).

The facts are too much in dispute to defeat summary judgment on this basis. The City points out that the plug mechanism it installed to divert the overflow into Levesque Ditch retained the capability of re-diverting the water back into Spiketon Ditch. Nothing in the Settlement Agreement that Plaintiff signed with the Puyallup Tribe and federal government committed it to <u>never</u> using Spiketon Ditch again (the statements of City representatives quoted by Froemke are not proof of such an intent, nor is there any evidence offered that these were agents with the authority to bind the City by their statements).

Plaintiff produces case law indicating that a hiatus of a year is insufficient time to establish the requisite intent to abandon. McCue v. Bellingham Bay Water Co., 5 Wash. 156, 159 (1892). And, perhaps most significantly, there is no evidence that the City abandoned or intended to abandon its use of Spiketon Ditch for stormwater drainage purposes.

Secondary easement

Plaintiff makes a supplementary request within the context of the summary judgment: that the Court declare the existence of an easement which extends for 5 feet on either side of the 10-foot ditch, creating a 20-foot easement over the Defendants' properties.

This is the only issue to which the U.S. responded, filing a brief in opposition to the City's attempt to expand the easement beyond the 10 feet of land which Spiketon Ditch occupies. The government points out (as do both Defendants) that all the other easements affecting Spiketon Ditch are only 10 feet and that Plaintiff has not justified the expansion of the easement on these properties. The government also invokes its right "to impose reasonable regulations on [the easement's] use to protect the United States' interest in the conservation easement" (citing Burlington v. United States, 533 F.3d 419 (6th Cir. 2008). However, in light of the Court's ruling regarding the invalidity of the conservation easement, the Court declines to reach this issue. If the City is not entitled to summary judgment on the underlying issue of the existence of the prescriptive easement, the issue of a secondary easement is moot for purposes of this motion.

Toman's damages

Defendant Toman takes the opportunity to object to the damage – deposits of silt and sludge from flooding -- which she alleges has been inflicted by the City's misuse of the ditch. The Court agrees with the City that this is not relevant to whether it has established a prescriptive easement over Spiketon Ditch. The issue of Defendant Toman's damages can be addressed separately in the litigation of her counterclaims.

**Conclusion**

Disputed issues of material fact preclude a finding that the City's use of Spiketon Ditch was either open and notorious or adverse to the Defendant owners. The Court finds no need to reach the issues of the existence of a secondary easement or the alleged damages to Defendant Toman's property.

Plaintiff City of Buckley's motion for summary judgment will be DENIED. In accordance with Judge Leighton's order of February 23, 2011 (Dkt. No. 111), the Court will issue an order on the remaining pretrial events and trial schedule following the filing of this ruling.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 11, 2011.

Marsha J. Pechman
United States District Judge