UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITY OF BUCKLEY,<br><br>                Plaintiff,<br><br>    v.<br><br>ANGELA TOMAN,<br><br>                Defendant. | CASE NO. C10-5209 MJP<br><br>ORDER ON MOTION FOR RECONSIDERATION |

The Court, having received and reviewed City of Buckley's Motion for Reconsideration/ Clarification (Dkt. No. 128) and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that the motion is DENIED.

**Discussion**

Plaintiff seeks reconsideration/clarification of two aspects of the Court's Order on Plaintiff's Motion for Summary Judgment:

1. The characterization of maintenance of the easement as (in Plaintiff's words) a "prerequisite" for establishing adverse use
2. The characterization of Defendant Froemke's opposition to the City's attempt to reclassify Spiketon Ditch as a fish-bearing stream as "an assertion of ownership rights."

<u>Maintenance of Spiketon Ditch</u>

The City seeks reconsideration or clarification of what it characterizes as the "holding" of the Court's order that "maintenance of a claimed easement is an essential duty during the prescriptive period." Mtn, p. 2.

The Court does not accept Plaintiff's characterization of the Court's analysis. First of all, the order notes that there are disputed issues of material fact concerning the maintenance of the ditch (which Plaintiff acknowledges), and that on that basis Plaintiff is not entitled to summary judgment based on its allegations of maintenance activities. Any language in the order which goes beyond that assertion is not essential to the holding and is dicta.

Secondly, although the City is correct that maintenance is primarily indicia of ownership of an easement (rather than establishment of an easement), the Court finds no support for the position that evidence of maintenance can (or should) be confined to that issue alone. Plaintiff maintained in its own briefing that "[t]he City's maintenance activities… are simply *additional evidence of the City's open and notorious use*, and are not a prerequisite to such a finding." Reply, p. 6 (emphasis supplied). "Open and notorious use" is an element of the *establishment* of a prescriptive easement, from which the Court concludes that the City acknowledges that evidence of maintenance is not solely confined to the question of ownership.

Finally, the evidence of maintenance (or lack thereof) was relevant to a critical aspect of Defendants' defense: the issue of *permissive use*. Defendants' ability to refuse the City's work

ORDER ON MOTION FOR RECONSIDERATION- 2

crews entrance onto their property is probative of their claim that, even if the City was utilizing Spiketon Ditch for the purposes it claims, that use was permissive, as evidenced by their ability to bar City employees from their property. "Adverse use" requires proof of such "use of the property as the owner himself would exercise, entirely disregarding the claims of others, asking permission from no one." (Lingvall v. Bartmess, 97 Wn.App. 245, 250 (1999)); the ability to refuse entry to agents of the purported easement holder creates a genuine issue of material fact regarding whether such an adverse use ever existed. Again, this is simply relevant on the issue of whether Plaintiff is entitled to summary judgment as a matter of law – it is not now "the law of the case" that, because Defendants refused City work crews entry to their property, they have proven themselves owners of the ditch.

Reclassification of Spiketon Ditch

The City objects to the following language in the S/J order:

> The Froemkes' formal objection to this proposal operated as a clear notice of intent to assert rights of ownership. Not only were they successful, but the City (which was the recipient and object of the protest) never controverted the underlying premise of the Froemkes' opposition: that, as owners of the ditch and surrounding lands, they had a right to object to any proposal which would have impacted their ability to use and enjoy their property.

Order, p. 11. But "ownership of the ditch evidenced by the reclassification protest" is clearly what the Froemkes claimed in their responsive briefing. ("The Froemkes defended *their control of the ditch*… again in 2001 when the City… sought to reclassify the ditch to a fish bearing stream." Froemke Brief, p. 3.) The Court's order does not state this premise as a fact, simply as the Defendants' position. The order points out what the Froemkes claimed (that their objection was an assertion of their right of ownership) and faults the City for failing to respond to the underlying premise of Defendants' argument – that, as owners of the ditch, they had the right to

oppose its reclassification. The City's reconsideration motion finally does respond to the argument (by pointing out that property owners who had already granted easements for the ditch were also part of the protest, therefore the Froemkes' action did not necessarily constitute an assertion – and certainly not proof – of ownership), but the City does not claim that it could not have made this argument in its responsive briefing originally and therefore it is not the proper subject of a motion for reconsideration.

The order does not say that the Froemkes were correct in their premise, only that the City failed to respond to it. That failure established another issue of disputed material fact and another basis for denying the summary judgment motion.

**Conclusion**

Motions for reconsideration are disfavored. The City has failed to establish that the Court's order contains any manifest errors of law, nor has it brought to light new facts or new law which it could not have presented to the Court in its initial pleadings. The motion for reconsideration is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated September 15, 2011.

Marsha J. Pechman
United States District Judge